IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 13-4286(L); 13-4287

———————————

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

ALVIN EDWIN BREWER, a/k/a Avenue,

*Defendant - Appellant.*

———————————

Appeal from the United States District Court
for the Western District of North Carolina

*The Honorable Max O. Cogburn, Jr., District Judge*

———————————

BRIEF OF THE UNITED STATES

———————————

Anne M. Tompkins
United States Attorney

Melissa L. Rikard
Assistant United States Attorney
227 West Trade Street
Carillon Building, Suite 1650
Charlotte, North Carolina   28202
(704) 344-6222

*Attorneys for the United States of America*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................ii

JURISDICTIONAL STATEMENT ........................................................ 1

ISSUE PRESENTED ............................................................................ 1

STATEMENT OF THE CASE .............................................................. 1

STATEMENT OF THE FACTS ............................................................ 2

SUMMARY OF THE ARGUMENT ..................................................... 10

ARGUMENT

      Defendant cannot challenge the classification of his 2001 conviction
      as a Class A felony during his supervised release revocation
      proceeding, and, in any event, the 46-month sentence that
      Defendant asked for and received is not plainly unreasonable .... 11

          A.   Standard of Review ...................................................... 11

          B.   Discussion .................................................................... 12

CONCLUSION ..................................................................................... 16

REQUEST FOR DECISION ON THE BRIEFS WITHOUT
          ORAL ARGUMENT ............................................................ 17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# <u>TABLE OF AUTHORITIES</u>

Cases

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) .........................................12

*United States v. Bell*, 5 F.3d 64 (4th Cir. 1993).......................................12

*United States v. Brewer*, 318 F.App'x 239 (4th Cir. 2009)....................5, 6

*United States v. Conyers*, 284 F.App'x 19 (4th Cir. 2008) ...............11, 13

*United States v. Crudup*, 461 F.3d 433 (4th Cir. 2007)..........................11

*United States v. Flagg*, 481 F.3d 946 (7th Cir. 2007) .............................13

*United States v. Hofierka*, 83 F.3d 357 (11th Cir. 1996) ........................12

*United States v. Olano*, 507 U.S. 725 (1993) ...................................11, 12

*United States v. Simpson*, 27 F. App'x 221 (4th Cir. 2001) ..............14, 15

*United States v. Warren*, 335 F.3d 76 (2d Cir. 2003).........................13, 14

Statutes

18 U.S.C. § 3231 ........................................................................................1

18 U.S.C. § 3582(c)(2) ...............................................................................5

21 U.S.C. § 841 ..........................................................................................7

21 U.S.C. § 851 ..........................................................................................4

28 U.S.C. § 1291 ........................................................................................1

28 U.S.C. § 2255 ........................................................................................4

Rules

U.S.S.G. § 5K1.1 ........................................................................................4

## JURISDICTIONAL STATEMENT

Defendant Alvin Brewer appeals the sentence imposed following revocation of his supervised release.   Defendant prospectively noticed his appeal on April 9, 2013, J.A. at 39-41, and the district court entered judgment on the revocation six days later, J.A. at 43-50.   The district court's subject matter jurisdiction derived from 18 U.S.C. § 3231.   This Court's jurisdiction to review Defendant's appeal is premised on 28 U.S.C. § 1291.

## ISSUE PRESENTED

Whether the law of the case doctrine prohibits Defendant from challenging in this appeal of his revocation sentence the classification of his underlying conviction, and, even if not, whether the 46-month revocation sentence that Defendant asked for and received was plainly unreasonable.

## STATEMENT OF THE CASE

Following his convictions for drug trafficking in 1996 and 2001, Defendant was serving five- and four-year terms of supervised release, respectively.   J.A. at 6, 14.   Defendant admitted to violating two

conditions of his supervised release, to wit, a new law violation and possession of drug paraphernalia, and, after having his supervised release revoked, was sentenced to concurrent terms of imprisonment of 33 months (for his 1996 case) and 46 months (for his 2001 case). J.A. at 43-50. After his revocation hearing but before the judgment was issued, Defendant filed a pro se motion seeking a lower sentence, arguing that there was no more supervised release remaining on his 1996 conviction and that the sentencing exposure he faced in his 2001 case had been reduced from ten years to life imprisonment to five to forty years, meaning his 2001 conviction was now a Class B felony. J.A. at 51-52. The district court issued the judgments on the revocation proceedings on April 15, 2013, J.A. at 43-50, and issued a written order on May 2, 2013, denying Petitioner's pro se motion to reduce his sentence, J.A. at 54-55. This appeal followed.

## STATEMENT OF THE FACTS

1. Defendant is convicted in 1996 and again in 2001 for conspiracy to distribute cocaine and cocaine base.

Following his indictment on drug trafficking charges in 1996, Defendant entered into a plea agreement with the Government in which

he pled guilty to conspiracy to distribute cocaine and cocaine base.   J.A.

at 59-60.   As part of the agreement, Defendant admitted that he was

responsible for 3.5 to 5 kilograms of cocaine.   J.A. at 60.   The

Pre-Sentence Report ("PSR") for this 1996 case noted that the underlying

felony was a Class A felony, as he faced at least ten years and up to life

imprisonment.   J.A. at 56.   Defendant was eventually sentenced to 41

months of imprisonment and five years of supervised release for this

1996 conviction.   J.A. at 6.   Defendant did not appeal or otherwise

challenge the Grade A classification of this conviction.   J.A. at 6.

Shortly after his release from prison for this offense, Defendant

was charged again, this time by bill of information, with conspiracy to

distribute cocaine and cocaine base.   J.A. at 13, 20, 70.   The

information alleged that the offense involved at least 50 grams of cocaine

base and at least 500 grams of cocaine powder, and that it occurred after

Defendant's 1996 federal drug trafficking conviction.   J.A. at 70.

Defendant entered into another plea agreement with the Government in

which he acknowledged that he faced a statutory minimum sentence of

twenty years of imprisonment and a statutory maximum of life

imprisonment.   J.A. at 72.   As part of the agreement, the parties jointly recommended to the court that the amount of cocaine base reasonably foreseeable to Defendant was between 50 and 150 grams, but the agreement also explicitly stated that this recommendation was not binding on the court and that the court retained "final discretion to impose any sentence up to the statutory maximum."   J.A. at 72-73. Finally, as part of the plea agreement, Defendant agreed to waive his right to contest the conviction or sentence on direct appeal or by collateral attack under 28 U.S.C. § 2255, except for claims of ineffective assistance of counsel or prosecutorial misconduct.   J.A. at 76.

In anticipation of the sentencing hearing on Defendant's 2001 drug trafficking conviction, a probation officer prepared a PSR, in which he noted that the conspiracy offense was a Class A felony, as Defendant faced twenty years to life in prison.   J.A. at 80, 91.   At the sentencing hearing, the district court granted the Government's motion for downward departure pursuant to U.S.S.G. § 5K1.1, noted the Government's withdrawal of its earlier notice pursuant to 21 U.S.C. § 851, and sentenced Defendant to 121 months of imprisonment and four

4

years of supervised release.   J.A. at 14, 94.   Again, as with his 1996 conviction, Defendant did not appeal any aspect of this 2001 conviction or sentence.   J.A. at 14.

Several years later, Defendant moved for a reduction of his sentence under 18 U.S.C. § 3582(c)(2) based on the United States Sentencing Commission's lowering of the guideline sentencing range for crack cocaine, and the district court subsequently lowered Defendant's sentence by one month, to 120 months of imprisonment.   J.A. at 21. The district court's order noted that "all provisions of the [April 24, 2002] judgment shall remain in effect."   J.A. at 21.   Defendant appealed from this order, contending that the new guideline range should have been lower and that Defendant was eligible for an additional sentencing reduction, but this Court summarily affirmed the district court's order. *United States v. Brewer*, 318 F.App'x 239 (4th Cir. 2009).   Defendant did not challenge the classification of his original conviction as a Grade A felony in this appeal.   *See* Fourth Circuit No. 08-8077, Doc. Nos. 10, 13.

5

2. Defendant's supervised release for his 1996 conviction was revoked based on his 2001 conviction, and he was sentenced in 2008 to a sentence of time-served.

Along with the filing of charges in Defendant's 2001 drug trafficking offense, the Government sought to revoke Defendant's supervised release based on two new law violations and several other violations (*e.g.*, failure to maintain employment, testing positive for marijuana and cocaine). W.D.N.C. Case No. 3:96CR4, Doc. No. 194. For these violations, Defendant was sentenced to a term of "time-served to date [May 5, 2008] on the conviction in 3:01CR27" and to an additional 33 months of supervised release. *Id.*; J.A. at 97.

3. Following his release from prison for the 2001 conviction, Defendant again violated terms of his supervised release.

Defendant was released from custody for his 2001 drug trafficking conviction on March 17, 2011. J.A. at 97. Approximately a year-and-a-half later, Defendant's supervising probation officer petitioned the district court for an arrest warrant for Defendant in both of his federal cases, contending Defendant violated four conditions of his supervised release. J.A. at 97, 110. Specifically, the probation officer submitted that Defendant (1) committed a new law violation on July 5,

6

2012, by possessing in his bedroom 30.9 grams of cocaine base and a white pasty substance that tested positive for cocaine, in violation of 21 U.S.C. § 841; (2) committed a new law violation on July 5, 2012, by possessing three bags of marijuana in his living room, which totaled more than 80 grams of marijuana, in violation of 21 U.S.C. § 841; (3) possessed drug paraphernalia, including digital scales, a marijuana grinder, a razor blade that tested positive for cocaine, two forks with cocaine residue, and a ledger containing a list of known drug dealers from his area; and (4) admitted that he had hidden in his living room couch two ounces of marijuana that he purchased in late June 2012. J.A. at 97-98, 110-11.

For the 1996 case, the probation officer noted that Defendant's underlying offense was a Class A felony, and, therefore, Defendant could not be required to serve more than five years of imprisonment.   J.A. at 100.   The petition in the 1996 case further noted that Defendant's violations were Grade A and Grade C violations, and, when the Grade A violations were coupled with his criminal history category of II (the calculation at the time of his 1996 conviction), Defendant faced an

7

advisory guideline range of 27 to 33 months of imprisonment.   J.A. at

101.   Similarly, the petition in the 2001 case noted that Petitioner's

underlying conviction was a Class A felony and, as such, the district

court could impose a term of imprisonment of up to five years.   J.A. at

113.   The probation officer further noted on the 2001 petition that the

Grade A violations coupled with Defendant's criminal history category

IV (the calculation in place at the time of his 2001 conviction) yielded an

advisory guideline range of 37 to 46 months of imprisonment.   J.A. at

114.

    4.  <u>At the revocation hearing, Defendant admits to two of the four
    violations and asks for – and receives – a sentence of 46 months of
    imprisonment.</u>

The district court convened the revocation proceeding in both of

Defendant's cases on March 27, 2013.   J.A. at 22.   At the start of the

hearing, Defendant agreed to admit to violations two and three

(committing a new law violation for possessing three bags of marijuana

and possessing drug paraphernalia), and, in exchange, the Government

agreed to dismiss the remaining violations.[1]   J.A. at 23-24.   The parties

---

[1]   In his brief, Defendant asserts that the district court "determined that

8

further informed the court of their agreement that Defendant should receive a total sentence of 46 months and, in exchange, the Government would not federally prosecute Defendant for the drugs and paraphernalia seized from his house.   J.A. at 25.

The district court accepted the sentencing recommendation and sentenced Defendant to 33 months of imprisonment on the 1996 case, a concurrent 46-month sentence for the violations in the 2001 case, and an additional 12 months of supervised release in each case.   J.A. at 35. Throughout the proceeding, the district court touted the "great deal" that Defendant received from the Government, noting that Defendant could have received this same amount of time on supervised release violations plus an additional lengthy term of incarceration in a separate federal case, based on the amount of drugs seized and Defendant's two prior federal drug convictions.   *See*, *e.g.*, J.A. at 30; *see also* J.A. at 31 (informing Defendant that his lawyer "made a good bargain for you") and 34 ("I think it's an excellent . . . agreement that your lawyer has worked out for you . . .").   While Defendant challenged the classification of his

---

[Defendant] had not violated conditions one and four."   Def. Br. At 6. This is not an accurate description of what happened.

9

underlying conviction after the revocation proceeding, J.A. at 51-52, he

never raised this as an issue during the hearing, J.A. at 23-37.

## SUMMARY OF THE ARGUMENT

Defendant did not appeal or previously challenge the classification

of his conviction in his 2001 case, so he is forbidden from doing so now,

years later, during his revocation proceeding.    Not only is the legal logic

in forbidding such a belated attack sound – relying on the law-of-the-case

doctrine and forbidding collateral attacks during revocation proceedings

– but so is the policy:    Defendant should not be given a special

opportunity to attack his underlying conviction when non-violating

defendants are not given the same chance.    This is especially true where

Defendant's plea agreement made clear that he was pleading guilty to a

Class A felony.    Further, the 46-month revocation sentence that

Defendant asked for and received is not plainly unreasonable, as it is

within the statutory maximum revocation sentence for either his 1996 or

2001 convictions.

10

## ARGUMENT

**Defendant cannot challenge the classification of his 2001 conviction as a Class A felony during his supervised release revocation proceeding, and, in any event, the 46-month sentence that Defendant asked for and received is not plainly unreasonable.**

### A.    Standard of Review

Ordinarily, this Court reviews revocation sentences for plain unreasonableness.    *United States v. Crudup*, 461 F.3d 433, 437 (4th Cir. 2007).    But where, as here, a defendant fails to raise an objection *during* the revocation proceeding, this Court reviews for plain error only. *United States v. Conyers*, 284 F.App'x 19, 20 (4th Cir. 2008) (unpublished) (emphasis added) (applying plain-error review where defendant "neither challenged his underlying conviction and sentence nor objected to his current sentence during the revocation hearing").    To meet this demanding standard:    (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights.    *United States v. Olano*, 507 U.S. 725, 732-34 (1993).    If these three elements are met, the Court may exercise its discretion to notice the error only "if the error seriously affect[s] the fairness, integrity or public reputation of

11

judicial proceedings." *Id*. at 736.

## B.    Discussion

Defendant now challenges in the appeal of his supervised release sentence the classification of the felony of his underlying conviction. But such a belated challenge is foreclosed under the law of the case doctrine which, absent exceptional circumstances, "forecloses relitigation of issues expressly or impliedly decided at a prior stage of a proceeding." *See United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993).   Defendant previously pled guilty to what all parties contemplated was a Class A felony, and he did not appeal that conviction or sentence.   He is, therefore, precluded from raising this challenge now, in his supervised release revocation proceeding, years after his conviction has become final.

Moreover, Defendant cannot collaterally attack his earlier conviction via a revocation proceeding.   *See, e.g.*, *United States v. Hofierka*, 83 F.3d 357, 363 (11th Cir. 1996).   In *Conyers*, this Court – albeit in an unpublished opinion – rejected a similar challenge to a defendant's classification of a felony under *Apprendi v. New Jersey*, 530

12

U.S. 466 (2000), because, *inter alia*, *Apprendi* was not retroactively applicable in the supervised release revocation proceeding. *Conyers*, 284 F. App'x. at 21. This Court followed the holdings of the Seventh and Second Circuits, which have held in published opinions that *Apprendi* was not retroactively applicable to challenges to the classification of the original felony in the supervised release setting. In *United States v. Flagg*, the Seventh Circuit held that "the proper method for challenging a [1994, non-*Apprendi*-compliant] conviction and sentence is through direct appeal or collateral review, not a supervised release revocation proceeding." *Flagg*, 481 F.3d 946, 950 (7th Cir. 2007). And in *United States v. Warren*, the Second Circuit held that the "validity of [Warren's non-*Apprendi*-compliant] sentence could not properly be raised in the supervised release revocation proceeding." *Warren*, 335 F.3d 76, 78 (2d Cir. 2003). The court discussed the various stages of the federal criminal process, observing that each "is progressively tailored to further the goal of finality without foreclosing relief for miscarriages of justice," and found that such a "detailed scheme is not consistent with allowing a supervised release revocation proceeding to become a forum for raising

13

claims of error in the conviction or original sentence." *Id.* at 79 (mentioning, among other reasons for this conclusion, that a contrary rule would lead to "endless confusion" in the courts and "be unfair" to non-violators if violators had a "special opportunity" for collateral attack). In this case, as in *Conyers*, *Flagg*, and *Warren*, Defendant should not be given a "special opportunity" to litigate an issue that has come and gone, simply by virtue of his violation of his terms of supervised release. *See also United States v. Simpson*, 27 F. App'x 221, 224 (4th Cir. 2001) (Chief Judge Traxler concurring in the judgment and reasoning that Simpson sought to deprive the sentence of his original conviction of "its normal force and effect by arguing [during his supervised release proceeding] that it violated *Apprendi*" and that this type of belated challenge "is the very definition of a collateral attack" that is forbidden in the supervised release setting).

Even if the issue remained an open one, this Court should affirm the classification of Defendant's conviction in the 2001 matter as a Class A felony. Defendant's plea agreement evinced the parties' intent that Defendant was pleading guilty to a Class A felony, as paragraph two of

14

the agreement explicitly set forth Defendant's sentencing exposure as 20 years to life imprisonment. [2]   While the plea agreement included a recommendation from the parties as to the drug amount, this amount was point of negotiation and, as Defendant agreed in the plea agreement, was not binding on the court.   Indeed, Defendant explicitly agreed that the court retained "the final discretion to impose any sentence up to the statutory maximum [of life imprisonment]."   J.A. at 72.   With this statutory maximum in mind, the probation officer correctly noted in the PSR that Defendant's offense was a Class A felony.   Because he agreed to plead guilty to a Class A felony, Defendant cannot now contend that his supervised release could only fall within the allowable range for Class B felonies.   *See Simpson*, 27 F. App'x. at 224 (rejecting Simpson's contention that a revocation of his supervised release for [a non-*Apprendi*-compliant sentence] could only fall within the allowable range for a Class C felony because his plea agreement, which included a sentencing range of ten years to life imprisonment, meant that he pled

---

[2]   It is also worth noting that Defendant waived his right to challenge the classification of his original conviction on appeal or by collateral attack.   J.A. at 76.

15

guilty to a Class A felony).

Finally, even if the law-of-the-case doctrine did not preclude Defendant from challenging the classification of his 2001 conviction as a Class A felony, and even if that classification were in error, the district court's judgment in this case should be affirmed.   Whether the burden is the Government's or Defendant's, the 46-month sentence that Defendant asked for and received was not plainly unreasonable.   The jointly-recommended sentence accounted for Defendant's agreement to serve that term of imprisonment in exchange for the Government's concession not to prosecute him again federally, an agreement that the district court repeatedly noted was "a great deal" for Defendant and allowed Defendant to avoid spending most of the rest of his life in prison. Furthermore, the 46-month sentence was within the statutory maximum not only for his 2001 conviction but also for his 1996 conviction, which Defendant does not dispute was properly categorized as a Class A felony.

## CONCLUSION

For these reasons, the Government respectfully requests that this Court affirm Defendant's 46-month revocation sentence and the

16

revocation judgment in its entirety.

## <u>REQUEST FOR DECISION ON THE BRIEFS<br>WITHOUT ORAL ARGUMENT</u>

The United States does not believe that oral argument will assist the Court in any material way and requests that this appeal be decided on the briefs.

Respectfully submitted, this the 7th day of October, 2013.

ANNE M. TOMPKINS
UNITED STATES ATTORNEY
s/ Melissa L. Rikard
Melissa L. Rikard
VA Bar Number # 65870
Assistant United States Attorney
227 West Trade Street
Carillon Building, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
Fax: (704) 344-6229
E-mail: Melissa.Rikard@usdoj.gov

17

# <u>CERTIFICATION OF COMPLIANCE</u>

1.    This Brief has been prepared using (select and complete only one):

__x__    Fourteen point, proportionally spaced, serif typeface (such as CG Times or Times New Roman, NOT sans serif typeface such as Arial).   Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, CG Times, 14 point): <u>Microsoft Word, Century Schoolbook, 14 point</u>

_____ Twelve point, monospaced typeface (such as Courier or Courier New).   Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, Courier 12 point):

2.    EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains (select and complete only one):

3._____    Pages (give specific number of pages; may not exceed 30 pages for opening or answering brief or 15 pages for reply brief); OR

_3002_ Words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief); OR

_____ Lines of Monospaced Type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.   If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

> s/Melissa L. Rikard
> Assistant United States Attorney
> USAO Charlotte, NC

## **CERTIFICATE OF SERVICE**

I certify that I have this day served a copy of the above upon Defendant herein by serving his attorney of record, William R. Terpening, through electronic case filing.

This the 7th day of October, 2013.

s/Melissa L. Rikard
Assistant United States Attorney
USAO Charlotte, NC